## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KAMOL CALLISTE
JOVINI SANCHEZ
EDWARD CHAMBERS
ANTHONY RAMIREZ
VERONICA PANCHAM
TAOHEED ADEKUNLE
ELLIS ATKINS
CHRISTOPHER BANKS
DARWIN ABREU
DELISE CHUNG
JEFFREY DIMEO
ELAINE LOPEZ
ERIC LUI
SHELDON MACON
MICHAEL RACHEL
NAVENDRA RAMASAMI
JEROME SMITH

     Plaintiffs,

     v.

CITY OF NEW YORK,

     Defendant.

**Civil Action. No. 1:24-cv-04016**

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their complaint against the City of New York ("New York City" or "The City"), state as follows:

## INTRODUCTION

1.     Plaintiffs are current and former employees of the Defendant, City of New York, who work or have worked in the position of Peace Officer, Sergeant, Corporal, Security Assistant,

and Specialist ("affected positions" or "affected employees") for the Public Safety Department ("PSD") of the City University of New York ("CUNY"). Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207 and 29 U.S.C. § 216(b) to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2.      Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation under the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby Defendant has suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts, after their paid shifts, and during their meal periods, and whereby Defendant has paid Plaintiffs and all those similarly situated various payments such as night shift differential, firearms differential, and fire safety differential on top of their regular pay, but has failed to include these additional payments in the calculation of the regular rate of pay at which Plaintiffs' overtime rate is based.

## PARTIES

3.      Plaintiffs, all of whom are listed in Exhibit A, have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4.      Each of the Plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

5.      For example, at all times material, Plaintiff Kamol Calliste has worked as a Peace Officer at Kingsborough Community College, located at 2001 Oriental Boulevard, Brooklyn, New York 11235; Plaintiff Jovini Sanchez has worked as a Peace Officer at Queensborough Community

College, located at 222-05 56th Avenue, Queens, New York 11364; Plaintiff Edward Chambers has worked as a College Security Assistant at Kingsborough Community College, located at 2001 Oriental Boulevard, Brooklyn, New York 11235; Plaintiff Anthony Ramirez has worked as a Security Specialist at Kingsborough Community College, located at 2001 Oriental Boulevard, Brooklyn, New York 11235; and Plaintiff Veronica Pancham has worked as a Sergeant at Kingsborough Community College, located at 2001 Oriental Boulevard, Brooklyn, New York 11235.

6.      Defendant New York City is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, NY, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

9.      Plaintiffs are, and have been at all times material, employed by Defendant in the CUNY PSD at various locations across the City. In this position, Plaintiffs' principal job duties include maintaining the peace, safety, and security of CUNY campuses across the City. Plaintiffs' principal job duties further include detecting and preventing crime; enforcing laws, rules, and regulations; responding to violent events such as fights; responding to medical events; responding

to threats to CUNY's facilities, students, faculty, and staff (e.g., fires or bomb threats); responding to other emergent events; responding to routine calls for service; providing specialized safety and security at events; providing traffic control and parking services; conducting and participating in investigations and interviews; controlling access to campus and campus facilities; dispatching; report-writing; and fire safety. Plaintiffs must also develop and maintain positive relationships with faculty, staff, and students, and conduct related education and outreach.

10.    Plaintiffs utilize certain equipment that is required, integral, and indispensable for the performance of their primary job duties, including protective vests, duty belts, radios, firearms, handcuffs, pepper spray, and vehicles.

11.    While working for CUNY PSD, Plaintiffs, as part of their regular schedule, routinely work over 40 hours a week. However, the City fails to compensate them for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rate of pay.

12.    The regular schedule for Plaintiffs consists of five, eight and one-half hour shifts each week, for a total of 45 scheduled hours. Of those hours, only 40 are compensated, because Defendant automatically deducts 30 unpaid minutes each day for a meal period. As part of their regular schedule, Defendant has suffered or permitted Plaintiffs and all others similarly situated to work at least 15-30 minutes before and after their shifts, each day. Defendant also regularly suffers or permits Plaintiffs to perform work during their meal periods. Defendant does not compensate them for this additional work time. Instead, Defendant only compensates Plaintiffs for time in excess of the scheduled shift that it deems to be "pre-approved." As such, Defendant regularly fails to compensate Plaintiffs at a rate of one and one-half times their regular rate of pay for a minimum of 75-150 minutes of work they perform each week in excess of 40 hours..

13.     Additionally, under Agency-wide policy and/or collective bargaining agreements, Plaintiffs receive certain premium payments on top of their base pay, including a night shift differential, as well premiums for fire safety ("fire safety differential") duties or for carrying a firearm ("firearm differential").

14.     When Defendant *does* compensate Plaintiffs for pre-approved overtime (which does not include work described above in Paragraphs 11 and 12), Defendant systemically fails to pay them for this overtime work at the correct rate because it fails to include, among other things, their differential payments in the regular rate at which overtime is calculated.

### ***Uncompensated Work Performed by Plaintiffs***

15.     Plaintiffs perform their primary job duties, which include but are not limited to those duties enumerated in Paragraph 9, prior to their scheduled shifts. For example, as part of their regular schedule, Plaintiffs, including but not limited to Plaintiffs Calliste, Sanchez, Chambers, Ramirez, and Pancham, arrive 15-30 minutes prior to the start of each of their scheduled shifts in order to obtain and don their protective vests (which they wear under their uniform shirt); and obtain and don their duty belts, containing pepper spray, handcuffs, and a baton and are not compensated for this work time. Because this is dangerous protective equipment for which Plaintiffs are held accountable, they cannot bring it home, and instead must store and don it at the worksite. Plaintiffs also pick up radios and conduct administrative work, such as preparing for roll call, prior to their shifts. To prepare for roll call, which begins at the same time as the shift starts, Sergeants, such as Plaintiff Pancham, are required to prepare and post assignments for the shift as well as to obtain and organize pertinent information about the shift.

16.     Plaintiffs then clock in right at the beginning of their scheduled shift start time using a timeclock, which they toggle with their ID cards. These clocks are integrated into the Kronos timekeeping and payroll system. After clocking in, Plaintiffs attend roll call, receive their

assignments for the day, pick up any additional equipment necessary for their daily assignment, and walk to their assigned post, vehicle, or other worksite.

17.    Plaintiffs also perform their primary duties, including but not limited to those duties enumerated in Paragraph 9 after their scheduled shifts. For example, Plaintiffs are regularly assigned to posts on campus during their shifts, and may not leave those posts until they are relieved. Plaintiffs regularly are not relieved with sufficient time to walk back to their lockers and remove and store their equipment prior to the end of their shifts. As such, Plaintiffs, including but not limited to Plaintiffs Calliste, Sanchez, Chambers, Ramirez, and Pancham, regularly spend between 10-15 minutes of uncompensated, post-shift time walking back across the campus to their lockers while continuing to engage in their primary duty of ensuring the peace, safety, and security of the campus while, among other things, engaging with students, faculty, and staff; remaining alert for any possible threats to campus safety; remaining available to respond to emergencies; returning their radios and any keys, and removing their required, integral, and indispensable equipment and safely store it in their lockers.

18.    Plaintiffs always clock out—using the same time ID card toggled time clock linked to the Kronos timekeeping and payroll system—prior to removing and securing their required, integral, and indispensable equipment. Thus, if Plaintiffs are not relieved from their posts with enough time to make it back before the end of their scheduled shift time, they will clock out after the end of their scheduled shift time, and then remove their required, integral, and indispensable equipment and securely store it.

19.    Plaintiffs are not compensated for any of this post-shift time—either post-shift time captured by the Kronos timekeeping system when Plaintiffs clock out after the end of their

6

scheduled shift times, or post-shift time they spend removing and securely storing their equipment after they clock out.

20.    Furthermore, during their 30-minute uncompensated meal breaks, Plaintiffs are not completely relieved of duty. Instead, Plaintiffs must remain alert and able to respond to emergencies. When an emergency is announced over the radio, Plaintiffs are expected to respond, and can be disciplined if they do not. Emergency response takes at least 15-30 minutes, and Plaintiffs regularly respond to at least one emergency during their meal periods every one-to-two weeks. Plaintiffs may also spend their meal periods conducting interviews or investigations that they cannot pause to take their meal period. When Defendant suffers or permits Plaintiffs to work through their meal period, Defendant nevertheless automatically deducts 30 minutes of time from their pay; Plaintiffs are not compensated for this work.

21.    As such, each week, Plaintiffs perform, at minimum, 75-150 minutes of uncompensated overtime work on top of their regularly scheduled 40 hours.

22.    For example, during the week of April 28, 2024 through May 4, 2024, Plaintiff Kamol Calliste worked at least his five, regularly-scheduled shifts of eight and one-half hours, arriving approximately 15 minutes before each of his shifts to engage in pre-shift work activities, including those enumerated in Paragraphs 9 and 15. Additionally, that week he responded to at least one emergency during his meal period—a fight in the gym—that interrupted at least 15 minutes of his meal period. Defendant failed to compensate him for this time. As such, during the week of April 28, 2024 through May 4, 2024, Plaintiff Calliste worked approximately 90 minutes of uncompensated time.

23.    For further example, during the same week, Plaintiffs Jovini Sanchez, Edward Chambers, and Anthony Ramirez each worked at least their five, regularly-scheduled shifts of

eight and one-half hours, arriving at least 15 minutes before the start of their shifts to engage in work activities, including those enumerated in Paragraphs 9 and 15. Defendant failed to compensate them for this time. As such, Plaintiffs Sanchez, Chambers, and Ramirez each worked at least 75 uncompensated minutes that week.

### *Rate at Which Overtime is Paid to Plaintiffs*

24.    Plaintiffs routinely work additional shifts of pre-approved overtime for which they are paid, in addition to the daily unpaid overtime described above.

25.    While working for CUNY PSD during the last three years, Plaintiffs have received certain payments in addition to their basic pay. These payments include, but are not limited to: a night shift differential of 10%; a fire safety differential; and a firearm differential. These payments are made pursuant to Agency-wide policy and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all others similarly situated.

26.    However, on occasions when Plaintiffs are paid overtime compensation, Defendant wrongly fails to include these additional differential payments in the regular rate of pay used to calculate the overtime rate payable to Plaintiffs and those similarly situated.

27.    The failure to include these differential payments in Plaintiffs' regular rates of pay means that when Plaintiffs receive paid overtime for working in excess of 40 hours in a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

28.    Plaintiffs who receive differential payments pursuant to Agency-wide policy and/or collective bargaining agreements, including Plaintiffs, routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 hours because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime issued to

Plaintiffs can be identified through the Defendant's timekeeping system and through other work and pay records.

### ***Defendant's Fair Labor Standards Act Violations are Willful***

29.     Defendant is aware that Plaintiffs and all others similarly situated clock in and out at the beginning and end of their scheduled shift times, regardless of when they actually begin and end working each day. The supervisors of Plaintiffs and all others similarly situated are aware of when they actually begin and end work, because Plaintiffs and all others similarly situated must be prepared for and in attendance at roll call at the very beginning of their scheduled shift start time; because Plaintiffs and all others similarly situated must wait to leave their posts until they are relieved; because Plaintiffs and all others similarly situated must remain alert and respond to emergencies during their meal periods; and because Plaintiffs, and all others similarly situated, and their supervisors share working space where the supervisors may observe the pre-shift and post-shift activities of Plaintiffs and all others similarly situated. In addition, when Sergeants arrive on the campus but before they obtain and don their equipment and clock in to the timekeeping system, their presence is announced over the radio and documented in the central logbook.

30.     When implementing its timekeeping system, Defendant chose to automatically deduct one half-hour each day for an uncompensated meal period—regardless of actual hours worked—despite knowingly promulgating and enforcing a policy that Plaintiffs and all others similarly situated must remain alert and respond to emergencies during their meal periods. Furthermore, Defendant is aware that Plaintiffs are subject to a policy or practice of clocking in and out at the beginning and end of their *scheduled* shift times, regardless of when they actually begin and end work.

31.    Defendant is aware that paying its employees based on their schedule—rather than on their actual hours worked—is a violation of the FLSA. For example, in *Perry v. City of New York*, the Second Circuit affirmed a jury verdict in favor of New York City EMTs and Paramedics in the amount of $17.78 million for FLSA violations, including failing to pay for pre-shift and post-shift time, and a finding of willfulness. 78 F.4th 502 (2d Cir. 2023). Similarly, in the consolidated cases of *Foster* and *De La Cruz v. City of New York*, the trial court granted summary judgment for employees working at two other City agencies—the Administration for Children's Services and the Human Resources Administration—on FLSA claims that the City had failed to compensate them for time worked before and after their scheduled shifts, where the City treated that time as "uncompensated" because it fell outside of workers' scheduled shifts. 1:14-cv-04142, 1:14-cv-09220, 2017 WL 11591568, at *4, *23-25 (S.D.N.Y. Sept. 30, 2017).

32.    Despite the fact that Defendant has fostered a policy or practice wherein Plaintiffs and all others similarly situated clock in and out at the beginning and end of their scheduled shifts, regardless of the hours actually worked, Defendant must pay its employees for their actual time worked. Defendant has repeatedly been held liable for failing to pay for pre- and post-shift work; it is well aware of its obligation to pay employees for overtime work which is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' superiors. *See, e.g.*, *Lawtone-Bowles v. City of New York*, 1:16-cv-04240, 2020 WL 2833366, at *4 (S.D.N.Y. June 1, 2020) ("Defendant[] . . . argu[es] . . . that Plaintiffs failed to report the unpaid overtime . . . . The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected."); *Foster/De La Cruz*, 2017 WL 11591568, at *4, *23-25 (in consolidated cases, granting summary judgment for two sets of plaintiffs—employees of the City's Administration for Children's Services and Human

10

Resources Administration, respectively—on FLSA claims that they worked uncompensated overtime of which their managers were aware, despite failure to seek pre-approval or otherwise request compensation); *Perez v. City of New York*, 1:12-cv-04914, 2017 WL 4326105, at *12-13 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that plaintiffs failed to "report" overtime where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours); *Worley v. City of New York*, 1:17-cv-04337, 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware).

33.     In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70 ("[I]t would be . . . the supervisor's responsibility to ensure that the employees get paid for work about which the employer is aware; correct?" "Correct."). *See also Foster/De La Cruz*, 2017 WL 11591568, at *9 ("[T]he City's chief employment lawyer . . . concedes that where a manager observes an employee working [outside their shift], the manager has an obligation to make sure that employee is compensated for that time, even if the employee did not obtain pre-approval[.]") (citations omitted).

34.     Nevertheless, at all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work that is performed with their supervisors' knowledge pre-shift, post-shift, and during meal periods.

35.     Despite numerous decisions finding the City liable for failing to pay for overtime work, the City has failed to take any steps with respect to its timekeeping systems or processes and

procedures to properly capture and compensate its workers for compensable time that is worked but not compensated by Defendant.

36.    Defendant has failed to conduct an audit or otherwise investigate whether Plaintiffs and all those similarly situated are engaged in work before or after their shifts; or whether they are being properly compensated for emergency responses during meals.

37.    The City has also previously been held liable for failure to properly calculate employees' regular rates of pay by failing to include differential payments, such as night shift differentials and longevity pay, in the rate at which overtime is paid to employees. *See, e.g.*, *Foster/De La Cruz*, 2017 WL 11591568, at *32-35; *Lawtone-Bowles v. City of N.Y.*, 2020 WL 2833366, at *5; *Lynch v. City of New York*, 291 F. Supp. 3d 537, 551-52 (S.D.N.Y. 2018). Despite these decisions, the City continues to fail to include such differential payments in the regular rates of pay of Plaintiffs and all others similarly situated.

38.    Defendant has failed to seek advice from the U.S. Department of Labor regarding whether its pay policies and practices comply with the FLSA.

39.    Defendant has not disciplined any CUNY PSD employees in an affected position for performing unpaid overtime before and/or after their scheduled shift hours.

## COUNT I

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS
ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION
OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

40.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 39 in their entirety and restate them herein.

41.    At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week they have performed

work activities, including but not limited to performing tasks enumerated in Paragraphs 9 and 15-17 without compensation before and/or after their scheduled shifts, all of which is recorded in Defendant's timekeeping records, sign-in/sign-out sheets, and other work logs. This additional, daily work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a week without proper overtime compensation in violation of the FLSA. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

42.    Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time, after the end time of their regularly scheduled shifts and during their uncompensated meal periods.

43.    As a result of Defendant's willful and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs are in the exclusive possession, custody and control of the Defendant and its public agencies and the Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve

payroll and other employment records with respect to the Plaintiffs from which the amount of Defendant's liability can be ascertained.

44.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

45.    Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

<u>**COUNT II**</u>

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

46.    Plaintiffs hereby incorporate by reference Paragraphs 1 through  45 in their entirety and restate them herein.

47.     Section 207(e) of the FLSA, 29 U.S.C. § 207(e), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendant has failed to include certain differential payments, including night shift differential pay, fire safety differential pay, and firearm differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and all others similarly situated, resulting in Defendant paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include these forms of additional compensation in Plaintiffs' regular rate of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

48.    As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly

situated an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and all others similarly situated from which the amount of Defendant's liability can be ascertained.

49.      Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

50.      Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Award Plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

Dated: May 24, 2024                          Respectfully Submitted,

                                             *s/ Gregory K. McGillivary*
                                             Gregory K. McGillivary (*Pro Hac Vice Forthcoming*)
                                             Sara L. Faulman
                                             Patrick Miller-Bartley (*Pro Hac Vice Forthcoming*)
                                             McGILLIVARY STEELE ELKIN LLP
                                             1101 Vermont Ave., N.W.
                                             Suite 1000
                                             Washington, DC 20005
                                             Phone: (202) 833-8855
                                             gkm@mselaborlaw.com
                                             smb@mselaborlaw.com
                                             pmb@mselaborlaw.com

                                             *s/ Hope Pordy*
                                             Hope Pordy
                                             Elizabeth Sprotzer
                                             SPIVAK LIPTON LLP
                                             1040 Avenue of the Americas
                                             20th Floor
                                             New York, NY 10018
                                             Phone: (212) 765-2100
                                             hpordy@spivaklipton.com
                                             esprotzer@spivklipton.com

                                             *Counsel for Plaintiffs*